In re Grover Craig LeSUEUR and Elida Marie LeSueur, Debtors.

The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff,

v.

Grover Craig LeSUEUR and Elida Marie LeSueur, Defendants.

Bankruptcy No. B–81–1233–PHX–GBN.

Adv. No. 81–767–GBN.

United States Bankruptcy Court, D. Arizona,

Oct. 4, 1985.

Daniel P. Collins, Rawlins, Burrus & Lewkowitz, P.C., Phoenix, Ariz., for plaintiff.

Michael B. Morrison, Phoenix, Ariz., for debtors.

## OPINION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This case concerns the effect of a Bankruptcy Court order denying dischargeability of an Arizona community debt as to one spouse but discharging the debt as to the other. It appears to be a case of first impression.

The dispute will be resolved by finding nonexempt, post-petition community property and the separate property of the spouse whose actions led to nondischargeability liable for this debt.

### I

Following trial, briefing and oral argument, oral findings and conclusions were entered that a series of consumer installment loans incurred by debtor Grover Craig LeSueur would not be discharged as having been procured by a materially false financial statement made with intent to deceive the Valley National Bank of Arizona ("Bank"). 11 U.S.C. § 523(a)(2)(B), Rule 7052, *F.Bk.R.;* Transcript of March 21, 1985; Docket Item 18.[1]

The complaint and cause of action was dismissed as to debtor Elida Marie LeSueur. Transcript, at 8, 10, 14, 16, 18.

Her dismissal was premised on the fact that fraud, which is never presumed, was not shown as to her. *Matter of Benedict,* 15 B.R. 671, 675 (Bankr.W.D.Mo.1981) (finding fraud as to husband, dismissing as to wife); *Matter of Curry,* 12 B.R. 421, 424–25 (Bankr.M.D.Fla.1981). Fraud for purposes of a bankruptcy dischargeability complaint cannot be imputed to a spouse based on a theory of Arizona community property law. *In re Norton,* 34 B.R. 666,

668 (Bankr.Ariz.1983); *In re Bursh,* 14 B.R. 702, 705–06 (Bankr.Ariz.1981).

The Bank subsequently submitted a proposed judgment against the defendant husband "and the marital community consisting of Grover Craig LeSueur and Elida Marie Le Sueur...." Defendants object to the form of this document, arguing, without citation of authority, that relief should simply be against Mr. LeSueur and his half of the community property. Docket Item 59. The creditor responds that under 11 U.S.C. § 524(b), post-petition community property is unaffected by Mrs. LeSueur's § 524(a) discharge. No reported case law appears in this area.

### II

The problem is similar to the situation where one party files bankruptcy, scheduling a community debt, and the other spouse does not. In either circumstance, commentators recommend that creditors of the nondischarged party be allowed to reach community property acquired after discharge when misconduct by one spouse is found by the court. 3 *Collier on Bankruptcy* ¶ 524.01[2] (L. King 15th ed. 1985); Pedlar, *The Implications of the New Community Property Laws for Creditors' Remedies and Bankruptcy,* 63 CALIF.L.REV. 1610, 1648–49 (1975).[2]

As recognized by Professor King, there is no totally satisfactory answer to this dilemma. *Coller, supra,* at 524–11. Certainly the Bank has the opportunity to participate with all other creditors in a dividend based on pre-petition community assets. 11 U.S.C. § 726. Allowing further access, this time to post-petition community property, clearly nullifies or at least complicates the innocent spouse's fresh start, "unhampered by the pressure and discouragement of pre-existing debt." *Lines v. Frederick,* 400 U.S. 18, 19–20, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970), citing *Local*

---

**1.** The loan of November 23, 1980 will be discharged since there is no proof the institution relied on the husband's written financial statement in making that loan decision. Transcript, at 16–17; 19; 11 U.S.C. § 523(a)(2)(B)(iii).

**2.** The 1975 California article did not deal with enactment of the community property discharge contained in § 524(a)(3) of the 1978 Code. *See infra.*

*Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 599, 78 L.Ed. 1230 (1934).

On the other hand, it is beyond dispute that the loans are a community debt and were so scheduled in debtors' joint petition. 11 U.S.C. § 302(a).

Although state law is not controlling, it is noted the Arizona courts have long held the community liable for intentional or negligent torts of one spouse when a community purpose or benefit can be established. *Selby v. Savard,* 134 Ariz. 222, 229, 655 P.2d 342, 349 (1982); *DePinto v. Provident Security Life Insurance Co.,* 374 F.2d 50, 52–55 (9th Cir.1967).

A series of modest consumer installment loans, obtained during marriage, based on marital assets and used for various family purposes, including home plumbing repair and purchase of a horse, constitutes a community purpose. Transcript at 4, 5. The husband's execution of the notes, in the absence of any evidence that the obligation was not of the community, binds the community. *Bainum v. Roundy,* 21 Ariz.App. 534, 536, 521 P.2d 633, 635 (1974). Accordingly, had bankruptcy not intervened, the "innocent" spouse could expect collection of this debt from community property. Entry of a § 523(a) dischargeability order does not transform a community debt into a separate obligation of one spouse only.

The Code contemplates that joint debtors who did not engage in conduct proscribed by § 523 will hold their after-acquired community property free from pre-petition community claims. 11 U.S.C. § 524(a)(3). This special community property discharge will not apply when the debtor's spouse has had a discharge denied in the same or another case commenced within six years of the present filing. *Supra.*

Thus, the Code's clear policy is that the economic sins of either spouse shall be visited upon the community when a discharge is denied. *Collier, supra,* at 524–11. There is no reason why a different policy should follow when the spouse's offense results in an exception to discharge, rather than outright denial of discharge. A marital community whose actions do not conform to the standards imposed by law should not earn the same discharge received by joint debtors who did not engage in proscribed conduct.

## III

No legal authority supports the wife's position that only one-half of the after-acquired community property should be liable for this debt. On occasion, the Arizona courts have made all or a portion of the community liable for a spouse's separate debt for public policy reasons. *In re Ackerman,* 424 F.2d 1148, 1149–50 (9th Cir. 1970) (husband's separate federal tax liability valid against his half of community); *Gardner v. Gardner,* 95 Ariz. 202, 388 P.2d 417 (1964) (husband's separate alimony liability valid against community property of subsequent marriage); *Oglesby v. Poage,* 45 Ariz. 23, 40 P.2d 90 (1935) (wife's realty tax debt valid against her half of community).

These cases all predate the 1973 legislative revision of Arizona community property law which now permits premarital separate debts to be satisfied out of the contributions of that spouse to the community property. A.R.S. § 25–215 B. None of these authorities purport to deal with the question of community debt collection out of after-acquired community property following exception to discharge as to one spouse.

Even if there was authority for surcharging only one-half of the after-acquired community property for such debt, the benefit to the "innocent" spouse appears to be slight when compared to the practical problems such a policy would create.

First, how would the creditor collect? Would the Bank levy on a one-half interest in each item of nonexempt community property, or could it simply reach all community items up to one-half value of the total community? Would such levy result in the other spouse now holding as his or her separate property one-half of the former community property, or would it remain community property? *See* Effland,

*Arizona Community Property Law: Time for Review and Revision,* 1982 ARIZ. ST.L.J. 1, 22.

Second, such a policy constantly exposes the innocent spouse to levy and sale of her community interests in exchange for one-half the proceeds, less costs, from a forced execution sale. This approach appears only marginally better than liability of the entire after-acquired community. Regardless, such a policy choice is not before this Court; no federal or state law has been cited which compels such a result.

## IV

The policy choice is between allowing the innocent spouse his or her full fresh start or allowing a debtor who has been denied discharge of a particular debt to "hide" behind the discharge of his spouse. *Collier, supra,* at 524–10 to 11.

The Code's approach is to deny the community property discharge if the debtor's spouse has been denied a discharge. 11 U.S.C. § 524(a)(3).[3] It cannot be disputed that this debt is actually owed to this creditor by the community. The husband's actions in submitting a false financial statement clearly do not conform to the standards imposed by the Code to discharge a debt. 11 U.S.C. § 523(a)(2)(B). Accordingly, there is no reason to award the same discharge given to Arizona joint debtors who did not engage in proscribed conduct to this community.

Debtor's objections to the form of the judgment are overruled, with the exception that plaintiff will lodge an amended judgment which clearly reflects that the debt attaches only to nonexempt community property, acquired after the filing date of the petition and post-petition separate property of Grover Craig LeSueur. Post-petition separate property of Elida Marie LeSueur is not liable for this debt.

ORDERED ACCORDINGLY.

3. Even if the wrongdoer does not file a case, the community property discharge does not apply if

the nonfiling spouse would have been denied a discharge. § 524(B)(2).